UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD THOMAS,

       Petitioner,

v.

                                    Case Number: 08-cv-14273
                                    Honorable Patrick J. Duggan

CAROL HOWES,

       Respondent.
_____/

## OPINION AND ORDER

This is a habeas case filed under 28 U.S.C. § 2254. Petitioner Edward Thomas, a state prisoner currently incarcerated at the Cooper Street Correctional Facility in Jackson, Michigan,[1] filed this *pro se* habeas petition challenging his convictions for kidnapping, fourth-degree criminal sexual conduct (CSC), and domestic violence, following a bench trial in Wayne County Circuit Court in 2006. The trial court sentenced Petitioner, as a habitual offender, second offense, to sixty-six months to fifteen years in prison for the kidnapping conviction, one to two years in prison for the CSC conviction, and ninety-three days in jail for the domestic-violence conviction.

---

[1]Petitioner was incarcerated at the Lakeland Correctional Facility when he originally filed his habeas petition; however, he has since been transferred to the Cooper Street Correctional Facility. The proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated petitioner is the warden of the facility where the petitioner is incarcerated. Rule 2(a) of the Rule Governing § 2254 Cases; *see also Edwards v. Johns*, 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006). In most cases where a petitioner is transferred to a different facility after the petition has been filed, the Court would order an amendment of the case caption. However, because the Court is denying the petition in this case, it finds no reason to do so.

For the reasons that follow, the Court denies Petitioner's habeas petition. The Court also declines to issue Petitioner a certificate of appealability, although the Court will grant Petitioner an application for leave to proceed on appeal *in forma pauperis* because he was granted leave to proceed *in forma pauperis* in this Court. Fed. R. App. P. 24(a)(3).

## Background

This case stems from an incident that occurred on May 28, 2006 in Detroit, Michigan. The prosecutor's theory was that Petitioner forced the complainant, "PJ",[2] into his car, committed a sexual act on her, and forcibly held her against her will for three days.

Trial started on October 3, 2006. Petitioner waived his right to a jury trial and opted for a bench trial. PJ was first to testify.

PJ testified that, at about 10:30 p.m. on the day in question, as she was attempting to cross the street to go to her niece's house which was across the street from where she was residing at the time, Petitioner grabbed her hard around the neck and pulled her into his car. PJ specifically told Petitioner that she did not want to go with him. She indicated that she tried to struggle, but could not because she had a heart condition at the time. As a result of being forced into the car, PJ claimed that she had scratches on her arm and neck, a deep contusion on her chest, and the black dress she was wearing was torn.

---

[2] The Complainant's initials will be used in order to protect her identity.

PJ testified that Petitioner drove her to a vacant house and then pulled her out of the car and into the house. PJ testified that Petitioner then asked her to have sex with him, but she refused. Petitioner then proceeded to have sex with PJ without her consent. She said he bit her on the back of her shoulder. PJ said the only reason she had sex with Petitioner was because she was afraid. She denied using drugs during the kidnapping.

According to PJ, Petitioner then drove to a drug house, where he stopped. PJ saw one person there but did not say anything about the incident because she was scared. PJ said they drove around for about three days.

Petitioner then told PJ that he wanted her to call Isaac Dansby, her ex-boyfriend, for the purpose of obtaining a ransom from him. PJ approached an old man and lady who were sitting on their porch, and with Petitioner present, told them she was being held against her will and that she needed a phone to call the police. According to PJ, the lady would not let her use the phone because her son had been arrested the day before and she did not want the police coming to her house.

Petitioner then took PJ to another house, where she encountered some guys, who let her use the phone. PJ testified that the men distracted Petitioner while she made her calls. She said she first dialed 911 but no one answered. She then called Dansby. She told Dansby that Petitioner had taken her against her will and he wanted ransom money. She asked Dansby to come and get her. Petitioner then grabbed the phone from PJ. He told Dansby that he wanted money before he would release her.

Petitioner was talking to other individuals when Dansby drove up to the house. PJ

3

ran out and got into Dansby's vehicle and they drove away. PJ testified that she did not immediately go to the police but went home to shower and change her clothes. Afterward, she went to the police station with Dansby and gave a statement. She was subsequently treated at the hospital.

Dansby testified next. He testified that he received a phone call from PJ on May 30, 2006. She was upset and told him that she had been held by Petitioner for a few days. Dansby testified that PJ sounded ill and did not sound like herself; she was crying. He had known PJ for over twenty years.

Dansby testified that he had received three phone calls from PJ, and that in two of the calls, he received information from Petitioner that he wanted some money in exchange for PJ. The first was a request for $400.00. The second was a request for $40.00. Dansby said he received a third call from PJ, telling him to come and get her. Dansby drove to the house where PJ and Petitioner were located. PJ was running toward the car; Petitioner was chasing her. Dansby described PJ as being in total disarray; she had a bruise on the side of her head and her dress was torn. She told him that Petitioner had been abusing her for two or three days; she seemed disoriented. He wanted to take her to the hospital or call the police, but PJ said no. She said she needed to go home and take a bath. Dansby took her home and then to the police station.

The prosecution rested. The defense then called four witnesses: Vera Donnell, Joey Fussell, Lakeisha Taylor, and Angela Woodward.

Donnell testified that she knew Petitioner because Petitioner did some work for

4

her. Donnell said Petitioner came to her house that weekend with PJ, because he was trying to sell Donnell some kitchen cabinets. She said PJ did not appear to be in any distress and helped Petitioner carry in the cabinets. On cross-examination, Donnell said she was first contacted by a detective and then spoke to Petitioner's attorney.

Fussell testified that he was acquainted with Petitioner since high school. He claimed that during the weekend in question, Petitioner came to his house to give him and his son haircuts. Fussell said PJ was with Petitioner and did not appear to be in any distress. According to Fussell, PJ spoke with Fussell's girlfriend, Lakeisha Taylor. On cross-examination, Fussell acknowledged that he was contacted by Petitioner's attorney in this case.

Taylor's testimony was similar to that of Fussell. Taylor said she knew PJ through Petitioner. She said PJ did not appear to be in any distress while at the house. On cross-examination, Taylor acknowledged that Fussell asked her if she could appear in court to testify and reminded her who was at the house on the day in question.

Woodward testified that she was acquainted with Petitioner since childhood. She said Petitioner and PJ came to her house that Sunday and that Petitioner came onto the porch while PJ stayed in the car. Woodward testified that Petitioner introduced PJ as his future wife. Petitioner talked to Woodward and her family while PJ stayed in the car. Woodward said PJ did not seem distressed. Woodward testified that, prior to that time, she had not seen Petitioner for about two years. On cross-examination, she acknowledged that Petitioner's attorney had discussed the date with her.

After the defense rested, the prosecutor called one rebuttal witness, Detroit Police Officer Robert Kane. Officer Kane investigated the case. Officer Kane testified that after he advised Petitioner of his constitutional rights, he interrogated Petitioner and took a statement from him. The statement was read into the record.

In the statement, Petitioner admitted to being with PJ for three or four days and having rough sex and doing drugs with her that weekend. He said it was consensual. He said they hung out in the neighborhood in the car he was driving. Petitioner further stated that PJ was mad at him "because I was buying blow. Drugs." (10/4/06 Trial Tr. at 9.)

Following closing arguments, the trial court found Petitioner guilty. The court sentenced Petitioner on October 19, 2006.

Petitioner filed a direct appeal with the Michigan Court of Appeals, raising an insufficiency of the evidence claim with respect to his kidnapping and CSC convictions. On January 17, 2008, the Court of Appeals issued an opinion affirming Petitioner's convictions and sentences. *People v. Thomas*, No. 274469, 2008 WL 162802 (Mich. Ct. App. Jan. 17, 2008). Petitioner filed an application for leave to appeal that decision with the Michigan Supreme Court, raising the same claim. On May 27, 2008, the Supreme Court denied the application. *People v. Thomas*, 481 Mich. 879, 748 N.W.2d 842 (2008).

Petitioner neither filed a post-conviction motion with the state court nor a writ of certiorari with the United States Supreme Court. Rather, he filed this habeas petition on October 7, 2008, raising the same claim raised in both state appellate courts.

**Standard of Review**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), which is applicable to Petitioner's request for habeas relief, provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Simply stated, under Section 2254(d), Petitioner must show that the state court's decision "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts." *Price v. Vincent*, 538 U.S. 634, 639, 123 S. Ct. 1848, 1852-53 (2003).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S. Ct. at 1523. The

7

Supreme Court recently restated the following guidance for federal habeas courts making these assessments:

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. *Yarborough v. Alvarado*, 541 U.S. 652, 664, [] (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Ibid.* "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Knowles v. Mirzayance*, 556 U.S. –, – , 129 S. Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).
>
> . . .
>
> . . . Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington v. Richter*, – U.S. –, 131 S. Ct. 770, 786-87 (2011).

With the above standards in mind, the Court proceeds to address Petitioner's claim.

## Applicable Law and Analysis

### Insufficient Evidence Claim

In his one and only habeas claim, Petitioner contends that there was insufficient

evidence to support his convictions for kidnapping and fourth-degree CSC. He claims that kidnapping was not proven beyond a reasonable doubt because the victim was not held forcibly against her will. With respect to his CSC conviction, Petitioner alleges that the sexual contact with PJ was consensual.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073 (1970). The critical inquiry when reviewing a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979) (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16, 99 S. Ct. 2792 n.16).

"A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S. Ct. 843, 851 (1983)). The reviewing court "faced with a record of historical facts that supports conflicting inferences must presume– even if it does not affirmatively appear on the record– that the trier of fact resolved any such conflicts in

9

favor of the prosecution, and must defer to that resolution." *Wright v. West*, 505 U.S. 277, 296-97, 112 S. Ct. 2482, 2492-93 (quoting *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2792.)  This standard does not permit a federal habeas court to make its own subjective determination of guilt or innocence; the standard gives full play to the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts. *Herrera v. Collins*, 506 U.S. 390, 401-402, 113 S. Ct. 853, 861 (1993) (citing *Jackson*, 443 U.S. at 318-19, 99 S. Ct. at 2789).

"The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Matthews*, 319 F.3d at 788-89 (citation omitted).  In determining the sufficiency of the evidence, the Court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993) (citations omitted).

**Kidnapping Conviction**

In this case, the Court of Appeals upheld Petitioner's kidnapping conviction. The court stated:

> Michigan recognizes kidnapping either by secret confinement or forcible seizure. *People v. Hofman*, 225 Mich. App 103, 112; 570 NW2d 146 (1997). The elements of forcible seizure kidnapping are: "(1) a forcible confinement of another within the state, (2) done willfully, maliciously and without lawful authority, (3) against the will of the person confined or imprisoned, and (4) *an asportation of the victim which is not merely incidental to an underlying crime unless the crime involves murder, extortion or taking a hostage*." *People v. Wesley*, 421 Mich. 375, 388; 365 NW2d 692 (1984) (emphasis in original).
>
> Contrary to defendant's argument that there was insufficient evidence to support his kidnapping conviction, under the totality of the circumstances, a rational trier of fact could conclude otherwise. According to the victim's testimony, defendant grabbed her by her neck and pulled her into his car, thereby forcibly confining her in his vehicle. The victim asserted she told defendant that she did not want to go with him, and screamed and fought with defendant in the car, but that defendant kept driving, demonstrating that the victim's confinement was against her will.
>
> The victim and witness, Isaac Dansby, both testified that after driving the victim to a residence with access to a telephone, defendant demanded a sum of money from Dansby in exchange for releasing the victim. This evidence demonstrates that defendant asported the victim for the incidental purpose of extorting money. Based on this evidence, a rational trier of fact could conclude that defendant's forcible confinement of the victim was done willfully, maliciously, and without lawful authority. According greater weight to the testimony of the victim, Dansby, and police, and lesser weight to inconsistencies in the testimony of the victim and other witnesses, a rational trier of fact could conclude that the prosecution proved the elements of kidnapping beyond a reasonable doubt.

*Thomas*, 2008 WL 162802, at *1 (citations and footnote omitted).

The Court of Appeals correctly articulated Michigan law regarding kidnapping.

Michigan law states that in order to convict a defendant of forcible-seizure kidnapping, it must be shown that there was (1) a forcible confinement, (2) done willfully, maliciously, and without lawful authority, and (3) against the will of the person. *See Wesley*, 421 Mich. at 388, 365 N.W.2d at 696. Under Michigan law, a kidnapping may be premised on a showing of a confinement that is in fact secret or upon a showing of a forcible seizure or confinement with the intent to secretly confine, whether or not the confinement remains a secret. *People v. Jaffray*, 445 Mich. 287, 300-301, 519 N.W.2d 108, 115 (1994).

The victim in this case, PJ, testified that when she was attempting to cross a street, Petitioner grabbed her hard around the neck and pulled her into his car. Although Petitioner claimed that PJ "snuck away" with him, PJ never testified that she either agreed to meet Petitioner or sneak away with him. Rather, PJ testified that she specifically told Petitioner that she did not want to go with him. As a result of Petitioner forcing PJ into his car, she had scratches on her arm and neck and her clothing was torn. Dansby also testified that when he found PJ, she was in disarray, was wearing a ripped dress, and had bruises on her face. Further, PJ and Dansby established that Petitioner took PJ for the purpose of getting ransom money from Dansby. Based on this evidence, viewed in a light most favorable to the prosecution, a reasonable jury could have found Petitioner guilty of kidnapping beyond a reasonable doubt.

Therefore, the Court of Appeals' decision in this instance was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. The

state court's adjudication also did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at trial.

## CSC Conviction

Under Michigan law, a person who engages in sexual contact that is accomplished by force or coercion is guilty of fourth-degree criminal sexual conduct. Mich. Comp. Laws § 750.520e(1). "Sexual contact includes an intentional touching of the victim's intimate parts for the purpose of sexual arousal or gratification." *People v. Capriccioso*, 207 Mich. App. 100, 103, 523 N.W.2d 846, 848 (1994).

Regarding Petitioner's CSC conviction, the Michigan Court of Appeals stated:

> The victim testified that defendant used physical force to compel her to have sex with him, and that he bit her during the sexual assault. The victim asserted that the only reason she had sex with defendant was because she was afraid of him. A police officer testified that defendant, in response to post-arrest questioning, admitted having intimate contact with the victim and described the sex as consensual but "rough." This evidence confirms that defendant intentionally touched the victim for a sexual purpose. In ascertaining whether defendant used force to commit the sexual act, a rational trier of fact could believe the victim's testimony that the intercourse was involuntary and question the veracity of defendant's assertion that the sex was consensual, albeit physically rough. Consequently, based on a review of all the evidence, a rational trier of fact could conclude that defendant was guilty of fourth-degree criminal sexual conduct.

*Thomas*, 2008 WL 162802, at *2.

The issue in this case is whether Petitioner used force or coercion to have sex with the victim. PJ testified that after Petitioner took her by force into his vehicle, he drove to a vacant house, forced her into the house, and proceeded to have sex with her, without her consent. PJ also testified that she was scared. While Petitioner claimed that the sex was

consensual, the trier of fact was in the best position to weigh PJ's credibility against Petitioner's credibility.

The Sixth Circuit has held that the testimony of a victim alone is constitutionally sufficient to sustain a conviction. *O'Hara v. Brigano*, 499 F.3d 492, 500 (6th Cir. 2007) (holding that the victim's testimony that the petitioner abducted and raped her was constitutionally sufficient to sustain the petitioner's conviction despite the lack of a corroborating witness or physical evidence); *United States v. Howard*, 218 F.3d 556, 565 (6th Cir. 2000) (holding that the victim's testimony is sufficient to support a conviction, even absent physical evidence or other corroboration).

In this case, PJ's testimony was sufficient on its own to establish the elements of Petitioner's CSC conviction. Thus, the Court concludes that the Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. The state court's adjudication also did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at trial. Petitioner therefore is not entitled to habeas relief based on his insufficiency of the evidence claim.

**Certificate of Appealability**

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings, which was amended as of December 1, 2009, requires a district court to "issue or deny a certificate of appealability when it enters

a final order adverse to the applicant . . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11, Rules Governing Section 2255 Proceedings.

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997). To receive a certificate of appealability "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 1039 (2003) (internal quotes and citations omitted).

For the reasons stated in herein, the Court concludes that reasonable jurists would not find its assessment of Petitioner's sufficiency of the evidence claim debatable or wrong. The Court therefore declines to issue Petitioner a certificate of appealability.

## Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to habeas relief based on the claim set forth in his habeas petition.

Accordingly,

**IT IS ORDERED**, that Petitioner's application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED WITH PREJUDICE**;

**IT IS FURTHER ORDERED**, that the Court **DECLINES** to issue Petitioner a certificate of appealability;

**IT IS FURTHER ORDERED**, that Petitioner nevertheless may appeal this decision *in forma pauperis* because he was granted leave to proceed *in forma pauperis* in this Court. Fed. R. App. P. 24(a)(3).


Dated: March 23, 2011                    s/PATRICK J. DUGGAN
                                         UNITED STATES DISTRICT JUDGE


Copies to:

Edward Thomas, #524590
Cooper Street Correctional Facility
3100 Cooper Street
Jackson, MI   49201

AAG Laura A. Cook